DANIEL G. BOGDEN
United States Attorney

GREG ADDINGTON
Nevada State Bar No. 6875
Assistant United States Attorney
100 West Liberty Street, Suite 600
Reno, Nevada 89501
(775) 784-5438
(775) 784-5181 (fax)

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

UNITED STATES OF AMERICA,   )
                            )
          Plaintiff,        )
                            )
     v.                     )
                            )
$102,836.00 IN UNITED STATES )
CURRENCY,                   )
                            )
          Defendant.        )
_____

# COMPLAINT FOR FORFEITURE IN REM

The United States of America, by and through Daniel G. Bogden, United States Attorney for the District of Nevada, and Greg Addington, Assistant United States Attorney, in a civil cause for forfeiture, respectfully states as follows:

1. This court has jurisdiction under 19 U.S.C. §§ 1603 and 1610; Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions; 21 U.S.C. § 881(a)(6); 18 U.S.C. § 983; and 28 U.S.C. §§ 1345 and 1355.

2. This court has venue of this matter pursuant to 28 U.S.C. § 1395 because the above-named defendant is now, and during the pendency of this action will be, in the jurisdiction of this court.

3. In rem jurisdiction over the defendant property will be obtained through issuance of an appropriate warrant of arrest in rem or supplemental process pursuant to Rule G(3), Supplemental Rules.

1        4.  The defendant is more particularly described as follows: $102,836.00 IN UNITED

2    STATES CURRENCY, which was seized on July 12, 2010, from the vehicle being driven by Santiago

3    Cruz, Jr. (hereinafter "Cruz").

4        5.  On or about July 12, 2010, the defendant property was seized on land at Washoe County,

5    Nevada, by officers of the Nevada Highway Patrol (NHP).  On or about July 30, 2010, the NHP

6    seizure was adopted by the Drug Enforcement Administration (DEA), United States Department of

7    Justice, in accordance with applicable regulations.  Ever since the adoption, the defendant property

8    has remained in the care, custody and control of the Office of the United States Marshals Service, Las

9    Vegas, Nevada.

10        6.  The defendant property was subject to administrative summary forfeiture proceedings;

11    however, a claim was filed by Cruz on or about August 17, 2010, claiming ownership of the defendant

12    currency.

13                    GENERAL ALLEGATIONS

14        7.  On July 12, 2010, at approximately 1:42 p.m. (Pacific Time), Cruz  was driving a 2010

15    Black Chevrolet Impala  vehicle, bearing Arizona license plate number AGP1744, west-bound on

16    Interstate-80 in Washoe County, Nevada.  The registered owner of the Chevrolet  vehicle was a car

17    rental company named EAP Holdings.

18        8.  There were no other occupants in the Chevrolet vehicle being driven by Cruz on July 12,

19    2010.

20        9.  The Chevrolet vehicle being driven by Cruz was stopped by an NHP officer in Washoe

21    County, Nevada, due to excessive speed in violation of Nevada law and due to an obstructed

22    windshield in violation of Nevada law.

23        10.  After initiating a traffic stop of the Chevrolet vehicle due to the observed traffic

24    violations, the NHP officer approached the passenger side of the vehicle and requested identification

25    from the occupant. The driver produced a Nevada driver's license which identified him as Cruz. The

26    NHP officer detected the odor of marijuana from the open passenger side window.  The NHP officer

1   also detected a strong odor of air freshener coming from within the vehicle.

2        11.  Cruz retrieved the vehicle rental agreement which reflected a rental beginning on June

3   28, 2010, in Las Vegas, Nevada, and rental return due date of July 5, 2010, in Las Vegas.

4        12.  During the period of time in which Cruz was retrieving his driver's license and the

5   vehicle rental agreement, Cruz exhibited obvious signs of excessive nervousness and anxiety.

6        13.  Upon Cruz's exiting of the Chevrolet vehicle at the NHP officer's request, the NHP

7   officer detected the odor of marijuana from Cruz's person.

8        14.  The NHP officer initiated a records check based on the information reflected in Cruz's

9   identification.  During the pendency of the records check, the NHP officer engaged Cruz in a

10  consensual conversation.

11       15.  During the consensual conversation with the NHP officer, Cruz stated that he (Cruz) was

12  traveling from Battle Mountain, Nevada, to California to pick up his mother to bring her back to Battle

13  Mountain for a funeral of a friend.  This statement appeared to be inconsistent with the rental

14  agreement reflecting a car rental which began in Las Vegas two weeks earlier.

15       16.  Following a records check by the NHP officer, Cruz was given a warning by the NHP

16  officer for the traffic violations.  After giving this warning to Cruz, the NHP officer informed Cruz

17  that he was free to leave.

18       17.  After the NHP officer informed Cruz that he was free to leave, the NHP officer and Cruz

19  engaged in a consensual conversation. During the consensual conversation with the NHP officer, Cruz

20  stated that there were no illegal narcotics inside the vehicle and Cruz also declined to consent to the

21  search of the Chevrolet vehicle.  Cruz stated to another NHP officer on the scene that he(Cruz) had

22  rented the vehicle in Las Vegas to drive to Battle Mountain because a friend had died.  Cruz further

23  stated that his friend had died on July 10, 2010, and that he was traveling to Fairfield to pick up his

24  mother and bring her back to Battle Mountain for a funeral.  Cruz's statement was inconsistent with

25  the car rental agreement which showed the rental beginning on June 28, 2010, nearly two weeks prior

26  to the date on which Cruz stated his friend had died.

3

1    18. The NHP officer informed Cruz that he (Cruz) would be detained to await the arrival of

2    a drug detection canine.

3    19. At approximately 2:25 p.m., an officer with the Washoe County Sheriffs Office (WCSO)

4    arrived with a canine trained to detect the odor of illegal drugs. The canine alerted to the presence of

5    such illegal drugs in the Chevrolet vehicle, indicating the source of odor from an illegal narcotic.

6    During the deployment of the canine around the Chevrolet vehicle, Cruz stated to the WCSO officer

7    that the vehicle did not contain a large amount of money.

8    20. Based on the totality of the circumstances at the traffic stop, the NHP officer and the

9    WCSO officer conducted a search of the Chevrolet vehicle.

10    21. The search of the Chevrolet vehicle yielded the discovery of a yellow and black duffel-

11    type bag in the trunk of the vehicle. The lower compartment of the yellow and black duffel-type bag

12    contained a large quantity of U.S. currency.

13    22. The search of the Chevrolet vehicle yielded the discovery of a black duffel-type bag on

14    the rear passenger seat of the vehicle. The black duffel-type bag contained several bundles of U.S.

15    currency bound with rubber bands and distributed among multiple pockets of the black duffel-type

16    bag. Also found in the black duffel bag was a photocopy of a California driver's license in Cruz's

17    name.

18    23. In addition to the U.S. currency located in the two duffel-type bags in the vehicle, the

19    search of the Chevrolet vehicle yielded the discovery of receipts for purchases at various locations

20    within the previous 2 weeks, a package of plastic resealable bags, a bottle of air freshener, two pre-

21    paid cellular telephones, and a "pay-owe" sheet reflecting narcotics transactions.

22    24. Following the search of the Chevrolet vehicle, Cruz voluntarily completed a portion of

23    a written questionnaire regarding the currency found in the Chevrolet vehicle. Responding to the

24    questions on the written questionnaire, Cruz stated that the currency was to be used to purchase a

25    house in Battle Mountain and represented funds he had obtained through the sale of a business, wages,

26    and gaming. Cruz also stated that he had been arrested previously for narcotics related offenses.

4

25. The travel-related receipts located in the Chevrolet vehicle reflected that the vehicle had been rented in Las Vegas on June 28, 2010; that a vehicle had been parked at the Phoenix, Arizona, airport on June 29, 2010; that Cruz had checked into a hotel in Fairfield, California, on June 29, 2010; that purchases had been made in Fairfield, California, on June 29 and 30, 2010; that purchases had been made in Santa Rosa, California, on June 30, 2010; that Cruz checked out of the hotel in Fairfield on July 1, 2010; that Cruz had rented a second vehicle in Oakland, California, on July 1, 2010; that Cruz returned the second rental vehicle in Las Vegas on July 2, 1010; that Cruz checked into a hotel in Scottsdale, Arizona, on July 3, 2010; that Cruz checked out of the hotel in Scottsdale, Arizona, on July 4, 2010; that the vehicle parked at the Phoenix airport had been taken out of the parking facility on July 4, 2010; and that purchases had been made in Battle Mountain, Nevada, on July 8, 2010.

26. Following the discovery of the U.S. currency in the vehicle, a canine trained to detect the odor of illegal drugs alerted to the presence of such illegal drugs in the currency, indicating the source of odor from an illegal narcotic.

27. The defendant in this action is the U.S. currency located in the yellow and black duffel-type bag and the U.S. currency located in the black duffel-type bag, all as described in paragraphs 21 and 22, above.

28. The U.S. currency located in the yellow and black duffel-type bag and the black duffel-type bag was comprised of 563 $100 bills, 80 $50 bills, 2,031 $20 bills, 127 $10 bills, 120 $5 bills, and 46 $1 bills.

29. The defendant property constitutes proceeds traceable to the exchange of controlled substances in violation of Title II of the Controlled Substances Act, 21 U.S.C. § 801 *et seq.* and is, therefore, subject to forfeiture to the United States of America pursuant to 21 U.S.C. § 881(a)(6).

30. The defendant property constitutes money furnished or intended to be furnished by a person in exchange for a controlled substance or listed chemical in violation of Title II of the Controlled Substances Act, 21 U.S.C. § 801 *et seq.* and is, therefore, subject to forfeiture to the United States of America pursuant to 21 U.S.C. § 881(a)(6).

31.   Because of the foregoing, the defendant property is subject to seizure and to forfeiture and has become and is forfeited to the United States of America, plaintiff, under 21 U.S.C. § 881(a)(6).

CONCLUSION

WHEREFORE, the United States of America, plaintiff, prays as follows:

1.   Due process issue to enforce the forfeiture of the defendant property;

2.   Due notice be given to any interested party to appear and to show cause why the forfeiture should not be decreed;

3.   The defendant property be condemned and be forfeited to the United States of America; and

4.   This court enter other and further relief as it deems just and proper.

Dated this __27__ day of October, 2010.

Respectfully submitted,

DANIEL G.. BOGDEN
United States Attorney

   /s/ Greg Addington
GREG ADDINGTON
Assistant United States Attorney

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

## VERIFICATION

I, Karen Rossi, am a Special Agent of the Drug Enforcement Administration, United States

Department of Justice, and am the agent assigned the responsibility of this case.

I have read the contents of the foregoing Complaint for Forfeiture in Rem, and the statements

contained therein are true to the best of my knowledge, information and belief.

I declare and verify under penalty of perjury that the foregoing is true and correct.

DATED: _10/29/2010_____

_____
KAREN ROSSI, Special Agent
Drug Enforcement Administration

7