UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA, ) )      Plaintiff, ) ) v. ) ) $102,836.00 IN UNITED STATES ) CURRENCY, ) )      Defendant. ) ) | 03:10-CV-00682-LRH-WGC  ORDER |

This is a civil forfeiture action. Before the court is plaintiff United States of America's Motion for Summary Judgment (#15[1]). Claimant Santiago Cruz has opposed the motion (#22), and the United States has replied (#23).

**I.     Facts and Procedural History**

On July 12, 2010, Santiago Cruz was driving west on Interstate 80 near Sparks, Nevada when Nevada Highway Patrol ("NHP") Trooper Jason Phillips pulled him over. Phillips thought that Cruz was speeding, and Phillips also observed an obtrusively-placed GPS[2] device mounted on Cruz's windshield.

---

[1] Refers to the court's docket number.

[2] Global Positioning System.

After pulling Cruz over, Phillips approached Cruz's car and asked for Cruz's driver's license. Cruz volunteered that the car was a rental, and Phillips asked to see the rental documents as well. The rental agreement had expired, but Cruz told Phillips that he had extended the rental term over the phone.

Phillips smelled a combination of marijuana and air-freshener wafting from the interior of the car. Thinking that Cruz was acting nervously, Phillips asked Cruz to exit the car. Phillips searched Cruz for weapons, and he claims he smelled marijuana on Cruz himself. However, there was no marijuana on Cruz's person or in his car, and Cruz claims that he does not use marijuana.

After Phillips asked Cruz about his criminal past, Cruz responded that he had one prior drug-related arrest. Phillips's record check confirmed a drug-related arrest and conviction. Phillips also asked Cruz if he had any methamphetamines, and Cruz said no. Phillips inquired about Cruz's travel plans, and Cruz said he was driving from Battle Mountain, Nevada to Fairfield, California in order to pick his mother up for a funeral back in Battle Mountain.

Phillips told Cruz he was free to go but immediately asked to search Cruz's car. Cruz declined, and Phillips called for a canine unit. The unit–NHP Trooper Erik Lee and dog "Petey"–arrived twenty to thirty minutes later. Lee walked Petey around Cruz's car, and Petey positively alerted to the trunk and the rear passenger door.

After Petey alerted, Phillips and Lee searched the car. They found two bags containing cash, one in the trunk and one in the back seat of the car. The NHP officers insist that Petey positively alerted to both bags, but Cruz claims that Petey simply jumped over the bag from the trunk when it was placed in front of him (Petey). The currency in the two bags totaled $102,836.00, mostly in $20 bills. When asked how much money he had with him, Cruz first answered "$1,000" and then said he did not know. Cruz explained that the money came from the sale of a business and other savings. He said that he intended to purchase a house in Battle Mountain with the cash.

The search of Cruz's car also turned up a sheet listing types of marijuana and their prices for various quantities, two prepaid cell phones, a package of resealable plastic bags, and receipts

1  showing purchases in Arizona, Nevada, and California in the previous weeks. These receipts, and
2  Cruz's deposition testimony, suggest that Cruz initially rented the car in Las Vegas; drove to
3  Phoenix, Arizona and parked at the Phoenix airport; flew to California; rented another car in
4  California; drove the second car back to Las Vegas; somehow got back to Phoenix (Cruz does not
5  remember how); drove the first car back to Las Vegas; and then drove the first car to Battle
6  Mountain.

7  The troopers seized the currency.

8  Cruz's prior drug-related conviction was for conspiracy to possess and distribute controlled
9  substances (methamphetamine and marijuana). He was released from federal prison in 2001,
10 moving first to his mother's home in Fairfield, California and then to Las Vegas, Nevada. Cruz was
11 unemployed from 2008 through 2010. Beginning in April 2010 and ending in June 2010, Cruz
12 withdrew $86,500 from several bank accounts in varying amounts.

13 Cruz explains his accumulation of cash in three parts: first, Cruz received a civil settlement
14 in 2009 for $29,075.46. Second, Cruz sold a car to Russell Price–a convicted tax-evader–for
15 $90,000 in January 2008. Third, Cruz sold his business, Diamante Customs, in 2009 for $30,000.
16 Cruz admits to buying a quantity of marijuana during his trip to California for a sick friend in Battle
17 Mountain, and he claims the price sheet found by the troopers was related to that trip. He also
18 explains that he used the plastic bags for this marijuana.

19 **II.    Legal Standard**

20 Summary judgment is appropriate only when "the pleadings, depositions, answers to
21 interrogatories, and admissions on file, together with the affidavits, if any, show that there is no
22 genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of
23 law." Fed. R. Civ. P. 56(c). In assessing a motion for summary judgment, the evidence, together
24 with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable
25 to the party opposing the motion. *Matsushita Electric Industries Co. v. Zenith Radio Corp.*, 475
26 U.S. 574, 587 (1986); *County of Tuolumne v. Sonora Community Hospital*, 236 F.3d 1148, 1154

1  (9th Cir. 2001).

2  The moving party bears the burden of informing the court of the basis for its motion, along with evidence showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On those issues for which it bears the burden of proof, the moving party must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986); *see also Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1141 (C.D. Cal. 2001).

8  To successfully rebut a motion for summary judgment, the non-moving party must point to facts supported by the record which demonstrate a genuine issue of material fact. *Reese v. Jefferson School District No. 14J*, 208 F.3d 736 (9th Cir. 2000). A "material fact" is a fact "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to establish a genuine dispute; there must be evidence on which the jury could reasonably find for the plaintiff. *See id.* at 252.

18  **III.   Discussion**

19  Under the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), the government has the burden to prove that the defendant property is subject to forfeiture by a preponderance of the evidence. 18 U.S.C. § 983(c). When the government's theory of forfeiture is that the property was used to commit or facilitate the commission of a criminal offense, the government must establish a "substantial connection" between the property and the offense. *Id*.

24  Here, the government's theory of forfeiture invokes the commission of a criminal offense. The government pursues forfeiture under 21 U.S.C. § 881(a)(6), which subjects currency to forfeiture if it were "intended to be furnished . . . in exchange for a controlled substance," or if it

were "proceeds traceable to such an exchange," or if it were "intended to be used to facilitate a violation of [the Controlled Substances Act, 21 U.S.C. § 801 *et seq.*]" Therefore, the government must establish a "substantial connection" between the currency and an illicit transaction by a preponderance of the evidence. Courts look to the "aggregate of facts," including circumstantial evidence, in making this determination. *United States v. Currency, U.S. $42,500.00*, 283 F.3d 977, 980 (9th Cir. 2002).

The first issue that Cruz addresses is the legality of the search. The legal principles applicable to Cruz's challenge are familiar: Phillips's required either probable cause or reasonable suspicion to stop Cruz for a traffic violation. *See Whren v. United States*, 517 U.S. 806, 810 (1996) (probable cause); *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984) (reasonable suspicion). If probable cause provided the foundation for the stop, Phillips had authority to detain Cruz for as long as it took to ask reasonable questions and to search Cruz, *Pennsylvania v. Mimms*, 434 U.S. 106, 110, (1977) (holding that officers may search drivers for weapons following investigatory traffic stop), and Cruz's car, *California v. Acevedo*, 500 U.S. 565, 580 (1991) (permitting warrantless searches of automobiles) within the bounds of the concerns animating Phillips's probable cause, *see Illinois v. Caballes*, 543 U.S. 405, 407 (2005) ("A seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete the mission."). Once Phillips let Cruz go, the detention was over, *Florida v. Bostick*, 501 U.S. 429, 434 (1991), and Phillips required at least reasonable suspicion to continue holding him, *see Terry v. Ohio*, 392 U.S. 1, 20 (1968).

Here, Cruz does not dispute that Phillips had probable cause to believe that Cruz had violated a traffic law by speeding or by placing a GPS device in a visually obstructive position. Though the parties do dispute whether all of Phillips's questions were proper, there is no question that the seizure had ended once Phillips told Cruz he was free to go. *See Bostick*, 501 U.S. at 434 (holding that the seizure concludes once "a reasonable person would feel free to disregard the police and go about his business"). After Phillips released Cruz, however, Phillips had a *Columbo-*

5

esque just-one-more-thing request: could he search Cruz's car? Cruz declined, and Phillips then detained Cruz "20 or 30 minutes" more while they waited for the canine unit to arrive.

Cruz has demonstrated a genuine issue of material fact with respect to whether this latter detention was supported by reasonable suspicion. First, the legality of Cruz's second detention is "material" for the purposes of summary judgment because the exclusionary rule applies in civil forfeiture cases. *United States v. $493,850.00 in U.S. Currency*, 518 F.3d 1159, 1164 (9th Cir. 2008). Whether the subsequent search of Cruz's car may be excluded as the consequence of an illegal detention, *see id.*, turns on Phillips's "particularized and objective basis for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (defining "reasonable suspicion"). Therefore, the reasonableness of Phillips's suspicions is a "fact which might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.

Second, at summary judgment, the evidence of the non-moving party is to be believed, *id.* at 255, and an inquiry into the implausibility of the non-movant's direct evidence is prohibited, *McLaughlin v. Liu*, 849 F.2d 1205, 1207-08 (9th Cir. 1988). While Phillips based his reasonable suspicion on Cruz's nervousness, Cruz's prior drug conviction, Cruz's convoluted travel history, and the smell of marijuana emanating from Cruz and his car, Cruz has directly challenged the presence of any drug odor. Moreover, Cruz did not have marijuana in his car or on his person, Phillips did not ask Cruz about marijuana, and Phillips never searched Cruz's car based on probable cause that there was contraband within—probable cause furnished by the smell of drugs. *See United States v. Barron*, 472 F.2d 1215, 1217 (9th Cir. 1973). Taking the evidence in the light most favorable to Cruz, therefore, the court interrogates the first three facts—Cruz's nervousness, prior conviction, and strange travel history—for their sufficiency in supporting Phillips's reasonable suspicion.

There is a genuine issue of material fact as to whether these three facts may support the reasonable suspicion necessary to detain Cruz "20 to 30 minutes" in anticipation of the canine unit. None of these facts, taken by itself, provides reasonable suspicion sufficient to justify such a

detention. *See United States v. Chavez-Valenzuela*, 268 F.3d 719, 725 (9th Cir. 2001), *overruled on other grounds by Muehler v. Mena*, 544 U.S. 93 (2005) ("[I]t is common for most people to exhibit signs of nervousness when confronted by a law enforcement officer whether or not the person is currently engaged in criminal activity."); *United States v. Sokolow*, 490 U.S. 1, 9 (1989) (noting that odd travel patterns may be "quite consistent with innocent travel"); *United States v. Cotterman*, 709 F.3d 952, 968 (9th Cir. 2013) ("[A] prior criminal history cannot alone establish reasonable suspicion."). And considered collectively (with the addition, perhaps, of the fact that Cruz was traveling in a rented car), reasonable minds could disagree about exactly how reasonable Phillips's suspicion was.[3] *Compare Arvizu*, 534 U.S. at 272 (finding reasonable suspicion after consideration of ten factors, including the driver's irregular speed, his presence on a known smuggling road, the odd position of passengers in the vehicle, the failure to acknowledge the officer despite being alone on the road with him, the type of vehicle, the time of day, and "odd waving" by children in the vehicle). This is especially true since "[i]n the absence of reasonable suspicion of illegal drug activity, [a] thirty-minute delay between the time [the officer] completed his independent investigation and the time the drug dog arrived runs afoul of the Fourth Amendment." *United States v. Motley*, 344 F. App'x 445, 446 (9th Cir. 2009). Because the reasonable suspicion standard contemplates a balance between "the public interest and the individual's right to personal security," an increased length of detention may require an increased quantum of (reasonable) suspicion. *See Arvizu*, 534 U.S. at 273 (citation and quotation marks omitted). *See also Florida v. Royer*, 460 U.S. 491, 500 (1983) (holding that as the length of the detention increases, so too must the strength of the reasons to detain). Therefore, summary judgment is inappropriate.

///

---

[3] "[E]ven when factors considered in isolation from each other are susceptible to an innocent explanation, they may collectively amount to a reasonable suspicion." *Cotterman*, 709 F.3d at 968 (quotation marks and citation omitted). Of course, the court considers "the objective facts known to" Phillips, not Phillips's subjective beliefs. *See Liberal v. Estrada*, 632 F.3d 1064, 1077 (9th Cir. 2011) (quotation marks and citation omitted).

7

**IV.    Conclusion**

IT IS THEREFORE ORDERED that the United States' Motion for Summary Judgment (#15) is DENIED.

IT IS FURTHER ORDERED that the parties shall submit a pretrial order within thirty (30) days from the date of entry of this order.

IT IS SO ORDERED.

DATED this 25th day of June, 2013.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE