UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) | 3:10-CV-00682-LRH-WGC |
| v. | ) ) | |
| $102,836.00 IN UNITED STATES CURRENCY, | ) ) ) | ORDER |
| Defendant. | ) ) | |
| SANTIAGO CRUZ, | ) ) | |
| Claimant. | ) ) | |

This is a civil forfeiture action. Before the Court is Claimant Santiago Cruz's ("Cruz") Motion to Suppress Evidence Pursuant to Supplemental Rule G(8). Doc. #27. The United States filed an Opposition (Doc. #28), to which Cruz replied (Doc. #31).

**I.  Facts and Procedural History**

On July 12, 2010, Cruz was driving westbound on Interstate 80 near Sparks, Nevada when Nevada Highway Patrol ("NHP") Trooper Jason Phillips ("Phillips") pulled him over for speeding and for an obtrusively-placed Global Positioning System ("GPS") device mounted on Cruz's windshield.[1]  Doc. #29, ¶4. Thereafter, Phillips approached Cruz's vehicle to request identification.

---

[1] It is against Nevada law to drive a vehicle at a rate of speed greater than the posted speed limit (NRS 484B.600) and to drive a vehicle with an obstructed front windshield (NRS 484D.435).

1  Doc. #29, ¶8.  Cruz produced his Nevada driver's license.  *Id.*  Phillips informed Cruz that it was
2  not his intention to issue a citation, but that he would conduct a routine check of Cruz's license.
3  Doc. #29, ¶9.  Cruz then volunteered that the car was a rental, and produced the rental agreement,
4  which stated that the rental period for the vehicle began on June 28, 2010, in Las Vegas, Nevada,
5  and was due back to Las Vegas one week earlier, on July 5, 2012.  Doc. #29, ¶12.  Cruz explained
6  that he had extended the rental term over the phone.  Doc. #27, p. 3.

7       Upon approaching the vehicle, Phillips recognized the odor of marijuana and the strong
8  odor of air freshener coming from the interior of the vehicle.  Doc. #29, ¶10.  Phillips also observed
9  Cruz to exhibit signs of nervousness and anxiety as he was looking for the rental agreement and
10 repositioning the GPS device.  Doc. #29, ¶13.  While the records check was being processed,
11 Phillips contacted NHP Trooper Erik Lee ("Lee") to inquire as to the availability of a canine unit.
12 Doc. #29, ¶15.  Lee informed Phillips that his NHP vehicle was temporarily out of service and that
13 he would arrive to the location with a canine as soon as possible.  *Id.*  Thereafter, Phillips requested
14 that Cruz exit the vehicle.  Doc. #29, ¶11.  When Cruz exited the vehicle, Phillips smelled
15 marijuana on Cruz's person.  *Id.*  Phillips then conducted a search of Cruz's person for weapons,
16 but discovered none.  *Id.*

17      Also while awaiting the results of the records check, Phillips inquired as to Cruz's criminal
18 history.  Doc. #29, ¶16.  Cruz responded that he had one prior drug-related arrest.  *Id.*  Cruz's
19 record check subsequently confirmed a drug-related arrest and conviction for drug trafficking.  *Id.*
20 Phillips also asked Cruz if he possessed any methamphetamine, and Cruz replied that he did not.
21 *Id.*  Finally, Phillips inquired about Cruz's travel plans, and Cruz stated that he was driving back
22 from Battle Mountain, Nevada to Fairfield, California in order to pick his mother up for a friend's
23 funeral back in Battle Mountain.  *Id.*  Cruz also stated that he had rented the vehicle in Las Vegas to
24 drive to Battle Mountain to visit family.  *Id.*  Additionally, Cruz admitted that he used to sell drugs
25 in Battle Mountain, but was no longer involved in that illegal activity.  *Id.*
26 ///

Thereafter, Phillips returned Cruz's license and rental agreement and informed Cruz that he would not issue a citation and Cruz was free to go. Doc. #29, ¶17. Before Cruz had returned to the vehicle, Phillips asked to conduct a search of the vehicle. *Id.* Cruz declined, and Phillips informed him that he was being detained until the narcotics canine unit arrived. *Id.* Phillips then returned to his patrol car to inquire as to the availability of a canine unit with the Reno Police Department ("RPD") or the Washoe County Sheriff's Office ("WCSO"). Doc. #29, ¶18. No canine units were available from either RPD or WCSO. *Id.* Phillips was thereafter informed that Lee was en route to his location with a canine unit. Doc. #29, ¶20. Lee and canine "Petey" arrived twenty to thirty minutes after the initial traffic stop had concluded. Doc. #29, ¶¶ 18-20; Doc. #27, p. 4. Upon arrival, Petey positively alerted to the trunk and the rear passenger door of Cruz's vehicle. Doc. #29, ¶21. A subsequent search of Cruz's vehicle yielded two bags containing cash, one in the trunk and one in the back seat of the car. Doc. #16, ¶16. The currency in the two bags totaled $102,836.00. *Id.* The search also yielded discovery of an air freshener container under the front passenger seat of the vehicle. Doc. #29, ¶23; Doc. #29, Ex. 17.

**II.    Legal Standard**

Rule G(8)(a) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions provides that "[i]f the defendant property was seized, a party with standing to contest the lawfulness of the seizure may move to suppress use of the property as evidence." A motion to suppress brought by a claimant in a civil forfeiture proceeding is akin to one brought by a defendant in a criminal case. *See One 1958 Plymouth Sedan v. Pa.*, 380 U.S. 693, 696-702 (1965) (holding that the Fourth Amendment is applicable to forfeiture proceedings); *see also* Civil Asset Forfeiture Reform Act of 2000, 18 U.S.C. § 981(b)(2)(B) (requiring that seizures be made pursuant to a warrant or based upon probable cause and pursuant to a lawful arrest or search). As such, the exclusionary rule applies in civil forfeiture cases. *One 1958 Plymouth Sedan*, 380 U.S. at 702; *United States. v. $493,850.00 in U.S. Currency*, 518 F.3d 1159, 1164 (9th Cir. 2008). The rule "bars the admission of evidence obtained in violation of the U.S. Constitution, as well as 'fruits of

3

the poisonous tree.'" *$493,850.00 in U.S. Currency*, 518 F.3d at 1164 (quoting *United States v. Ramirez-Sandoval*, 872 F.2d 1392, 1395 (9th Cir. 1989)). "[U]nder the 'fruits of the poisonous tree' doctrine, evidence obtained subsequent to a violation of the Fourth Amendment is tainted by the illegality and is inadmissible . . . ." *Id.* at 1164-65 (quoting *United States v. Washington*, 490 F.3d 765, 774 (9th Cir. 2007)).

**III.   Discussion**

Here, Cruz does not challenge the legality of the initial traffic stop based on Phillips' observed traffic violations. *See Whren v. United States*, 517 U.S. 806, 810 (1996) (the decision to stop an automobile is reasonable under the Fourth Amendment where the police have probable cause to believe that a traffic violation has occurred); *see also United States v. Wallace*, 213 F.3d 1216, 1219-20 (9th Cir. 2000) (the constitutionality of a traffic stop turns on whether there was an objective basis for the officer to believe that a traffic violation or some other infraction has been committed). Rather, Cruz challenges only the legality of his "prolonged detention," which followed the initial traffic stop, but preceded the positive canine alert and subsequent search of Cruz's rental car.[2]  *See* Doc. #27, p. 5. Indeed, the authority and limits of the Fourth Amendment's protection against unreasonable searches and seizures applies to investigative stops of vehicles such as the one at issue here. *United States v. Sharpe*, 470 U.S. 675, 682 (1985). In *Terry v. Ohio*, the Supreme Court adopted a dual inquiry for evaluating the reasonableness of an investigative stop. *Id.* (citing *Terry v. Ohio*, 392 U.S. 1, 20 (1968)). Specifically, courts are to evaluate "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Terry*, 392 U.S. at 20.

---

[2]  The Court notes that because a routine traffic stop may also include an assessment by a trained narcotics canine without implicating the Fourth Amendment, the prolonged detention at issue concluded upon the arrival of Lee and Petey. *See Illinois v. Caballes*, 543 U.S. 405, 409-10 (2005) (canine sniff of vehicle already lawfully detained during a traffic stop is not a new search and therefore does not require any suspicion as long as the driver is not detailed longer than necessary for the traffic stop). Moreover, the positive canine alert by Petey supplied the requisite probable cause to search the vehicle without a search warrant. *United States v. Ibarra*, 345 F.3d 711, 715-16 (9th Cir. 2003).

### A.     Reasonable Suspicion

As to the first prong of the inquiry, an investigative stop is only permissible where "the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot[.]'" *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (citing *Terry*, 392 U.S. at 30).  Whereas, here, the legality of the initial traffic stop is not at issue, the Court must evaluate whether the officer developed a "reasonable suspicion" of criminal activity sufficient to justify continued investigative detention under *Terry v. Ohio*.  *See Caballes*, 543 U.S. at 407 ("seizure that is justified solely by the interest in issuing a warning ticket to driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission"); *see also United States v. Turvin*, 517 F.3d 1097, 1100-04 (9th Cir. 2008) (duration of traffic stop is evaluated for reasonableness under the totality of the circumstances; traffic stop is not unreasonably prolonged where officer briefly pauses to ask questions unrelated to the purpose of the stop); *United States v. Motley*, 344 Fed. Appx. 445, at 446 (9th Cir. 2009) (30-minute delay between when officer completed his independent investigation and the time the drug dog arrived ran afoul of Fourth Amendment because officer lacked reasonable suspicion of criminal activity to justify continued detention) (citing *United States v. Luckett*, 484 F.2d 89, 91 (9th Cir. 1973)).

The officer "must be able to articulate something more than an 'inchoate and unparticularized suspicion or hunch.'" *Sokolow*, 490 U.S. at 7 (quoting *Terry*, 392 U.S. at 27) (internal quotation marks omitted).  "The Fourth Amendment requires 'some minimal level of objective justification' for making the stop." *Id.* (quoting *INS v. Delgado*, 466 U.S. 210, 217 (1984)).  Nevertheless, "the level of suspicion required for [an investigative] stop is obviously less demanding than that for probable cause[.]" *Id.* (citing *United States v. Montoya de Hernandez*, 473 U.S. 531, 541 (1985)).  In assessing the legality of an investigative stop, courts must consider the "totality of the circumstances." *Id.* at 8 (citing *United States v. Cortez*, 449 U.S. 411, 417 (1981)); *United States v. Arvizu*, 534 U.S. 266, 273 (2002).  The totality of the circumstances encompasses, among other things, "objective observations, information from police reports, . . . , and

5

consideration of the modes or patterns of operation of certain kinds of law-breakers." *United States v. Berber-Tinoco*, 510 F.3d 1083, 1087 (9th Cir. 2007) (citing *Cortez*, 449 U.S. at 418). Moreover, the circumstances must be considered from the perspective of an officer with relevant experience and training. *See Arvizu*, 534 U.S. at 273 (courts must consider the facts from the perspective of an experienced officer when assessing whether reasonable suspicion exists).

Here, Phillips articulates at least six circumstances and observations, all of which were ascertained during the course of the traffic stop, that justify Cruz's continued detainment for investigatory purposes. Doc. #28, pp. 22-24. While these factors, taken individually, may not be sufficient to justify a prolonged investigatory detention, taken together, the Court finds that they amount to reasonable suspicion sufficient to support the same. *See Sokolow*, 490 U.S. at 9 (finding that any one of the cited factors was not by itself proof of illegal conduct, but taken together they amounted to reasonable suspicion). Moreover, that there may be an entirely innocent and lawful explanation for many of these circumstances does not change the Court's determination. *See Reid v. Georgia*, 448 U.S. 438, 441 (1980) (per curiam) ("there could, of course, be circumstances in which wholly lawful conduct might justify the suspicion that criminal activity was afoot"). "*Terry* itself involved 'a series of acts, each of them perhaps innocent' if viewed separately, 'but which taken together warrant further investigation.'" *Sokolow*, 490 U.S. at 9-10 (citing *Terry*, 392 U.S. at 22). Accordingly, "even when factors considered in isolation from each other are susceptible to an innocent explanation, they may collectively amount to a reasonable suspicion." *Berber-Tinoco*, 510 F.3d at 1087.

        1.     *Odor of Marijuana*

Upon approaching Cruz's vehicle, Phillips recognized the odor of marijuana coming from the interior. Doc. #29, ¶10. Phillips also smelled marijuana on Cruz's person when Cruz exited the vehicle. *Id.* at ¶11. Here, the Court finds that Phillips' detection of the odor of marijuana coming from the vehicle and from Cruz's person, standing alone, would be sufficient to support continued investigative detention under *Terry* based on a reasonable suspicion of criminal activity.

6

*See United States v. Leazar*, 460 F.2d 982, 984 (9th Cir. 1972) (patroller's olfactory detection of marijuana odor in arrestee's vehicle created probable cause for arrest).

Cruz avers that Phillips fabricated the odor of marijuana and maintains that there was no marijuana present anywhere in the vehicle or on his person. Doc. #27, pp. 3-4. In support thereof, Cruz offers the fact that a subsequent search of the vehicle did not reveal the presence of any marijuana in the vehicle. *Id.* Moreover, Cruz asserts that if Petey was reliable in failing to detect the presence of marijuana, then Phillips must have fabricated the claim that he detected the odor of marijuana because Petey only alerted to closed bags of currency that were concealed in the trunk of the vehicle. *Id.* at 5. On the other hand, Cruz asserts that if Phillips did not fabricate the claim that he detected the odor of marijuana, then Petey must be unreliable because he failed to alert to the driver's side of the vehicle or to Cruz himself where Phillips detected the odor. *Id.* The Court rejects Cruz's false dichotomy, as it is entirely conceivable that the odor Phillips detected was coming from either the trunk or the rear of the vehicle, to which Petey later alerted, or from Cruz's person, to which Petey was not exposed.[3] Nevertheless, even if the Court were to disregard Phillips' testimony that he detected the odor of marijuana, the remaining circumstances, when considered together, support a finding of reasonable suspicion.

  2. *Strong Odor of Air Freshener*

Also upon approaching Cruz's vehicle, Phillips detected a strong odor of air freshener coming from the interior.[4] Doc. #29, ¶10. Phillips testified that, based on his training and experience with high-level drug offenses, he was aware that persons involved in drug trafficking

---

[3] Phillips only conducted a "pat-down" of Cruz for the presence of weapons, not contraband. Doc. #29, ¶11. Moreover, Cruz does not contest that his person was not searched for drugs.

[4] A subsequent search of the vehicle yielded the discovery of an air freshener container under the front passenger seat of the vehicle. Doc. #29, ¶23; Doc. #29, Ex. 17. Although Cruz initially maintained that air freshener was not found in the vehicle (Doc. #27, p. 3), he does not contest Phillip's Second Declaration or the authenticity of Exhibit 17, which depicts the air freshener container (Doc. #31). Moreover, he appears to concede the presence of an air freshener. Doc. #31, p. 1.

7

will use excess amounts of air freshener in an effort to mask the odor of drugs. *Id.*; Doc. #29, ¶2. While the use of air freshener, even in large quantities, may not raise the suspions of an average person, it did raise the suspions of Phillips, who had training and experience related to drug interdiction. *See Cortez*, 449 U.S. at 418 (an officer's training and experiences enable him [or her] to draw inferences that "might well elude an untrained person"). Accordingly, the Court finds this factor to be relevant in the determination of reasonable suspicion.

### 3. *Expired Rental Agreement*

Upon request, Cruz produced the rental agreement for the vehicle, which showed that the rental period for the vehicle began on June 28, 2010, in Las Vegas and was due back to Las Vegas on July 5, 2010.[5] Doc. #29, ¶12. Although Cruz explained that he had extended the rental period over the phone, and there is nothing inherently suspicious or illegal about doing so, the Court finds that this factor is at least minimally relevant in the total calculus of reasonable suspicion, especially in light of Cruz's unusual travel itinerary.

### 4. *Unusually Nervous and Frantic Demeanor*

Phillips observed Cruz to be frantic and exhibit obvious signs of nervousness and anxiety as he looked for the rental agreement. Doc. #29, ¶13. Additionally, Phillips noticed that Cruz's hands were shaking uncontrollably as he repositioned the GPS device. *Id.* Phillips testified that, based on his training and experience, he was aware that persons involved in criminal activity will often exhibit signs of extreme nervousness and anxiety during routine traffic stops and interactions with law enforcement. *Id.*

While nervousness and anxiety during an encounter with law enforcement alone cannot support reasonable suspicion, it may factor into the Court's assessment of the totality of the circumstances. *See United States v. Hernandez-Alvarado*, 891 F.2d 1414, 1418-19 (9th Cir. 1989)

---

[5] Cruz concedes that inquiring as to the validity of his rental agreement was permissible under the Fourth Amendment. Doc. #27, p. 6.

(defendant's alleged nervousness is insufficient to create reasonable suspicion); *see also United States v. Salzano*, 158 F.3d 1107, 1113 (10th Cir. 1998) (noting that "it is common for most people 'to exhibit signs of nervousness when confronted by a law enforcement officer' whether or not the person is currently engaged in criminal activity") (quoting *United States v. Wood*, 106 F.3d 942, 948 (10th Cir. 1997)); *United States v. Mesa*, 62 F.3d 159, 162-63 (6th Cir. 1995) (finding that "[a]lthough there are a plethora of cases referring to a defendant appearing nervous, nervousness is generally included as one of several grounds for finding reasonable suspicion and not a ground sufficient in and of itself"), abrogated on other grounds by *United States v. Aguilera-Pena*, 426 Fed. Appx. 368 (6th Cir. 2011). Accordingly, the Court shall consider Cruz's nervousness and anxiety as one factor in determining whether Phillips had reasonable suspicion.

        5.      *Prior Conviction for Drug Trafficking and Admission of Prior Sale of Drugs*

While awaiting the results of the routine license check, Phillips again approached Cruz outside of the vehicle and engaged in conversation.[6] Doc. #29, ¶16. At that point, Cruz informed Phillips that he had a prior drug-related arrest. *Id.* Cruz further explained that he used to sell drugs in Battle Mountain, but was no longer involved in that illegal activity. *Id.* The records check subsequently reflected a prior drug-related arrest and conviction for drug trafficking. *Id.*

While a person's criminal history, standing alone, is not sufficient to support a finding of reasonable suspicion, it is, nevertheless, appropriate and permissible to consider that history in the total calculus of reasonable suspicion. *See Untied States v. Cotterman*, 709 F.3d 952, 968 (9th Cir. 2013) (en banc) (citing *Burrell v. McIlroy*, 464 F.3d 853, 858 n.3 (9th Cir. 2006) ("Although a prior criminal history cannot alone establish reasonable suspicion . . . to support a detention or an arrest, it is permissible to consider such a fact as part of the total calculus of information in th[at] determination[ ].")).

---

[6] Cruz concedes that checking the validity of his driver's license was permissible under the Fourth Amendment. Doc. #27, p. 6.

To the extent Cruz contends that Phillip's questions regarding his prior drug conviction during the initial traffic stop were not reasonably related to the justification for the stop, and thus improper, the Court disagrees.[7] *See Mendez*, 476 F.3d at 1080 ("no reasonable suspicion is required to justify questioning that does not prolong the stop"); *see also Turvin*, 517 F.3d at 1101-03 (finding that an otherwise valid traffic stop is not rendered unlawful for Fourth Amendment purposes simply because the officer asks questions unrelated to the purpose of the traffic stop). Cruz does not contend, nor is there any indication in the record, that Phillips' unrelated questioning impermissibly prolonged the initial traffic stop. Accordingly, the Court finds it appropriate to consider Cruz's prior conviction and related drug history in the total calculus of reasonable suspicion.

### 6. *Odd Travel Plans and Stressed Reaction to Questions in Relation Thereto*

Also while awaiting the results of the routine license check, Phillips questioned Cruz about his travel plans.[8] Doc. #29, ¶16. Cruz stated that he was on his way back from Battle Mountain to Fairfield to pick up his mother and drive her back to Battle Mountain for a friend's funeral. *Id.* He also stated that he rented the vehicle in Las Vegas to drive to Battle Mountain to visit his family. *Id.* Phillips observed that during the conversation, Cruz repeatedly attempted to divert the conversation away from his travel plans by asking about Phillips' history and where he attended high school. *Id.* Cruz repeatedly put his hands into his pockets and then removed them, was pacing in front of Phillips and kicking the dirt beneath his feet, and exhibited other signs of undue stress during Phillips' questioning. *Id.*

---

[7] Cruz cites *United States v. Perez*, 37 F.3d 510, 513 (9th Cir. 1994), for the proposition that "[q]uestions asked initially during a traffic stop must be reasonably related to the justification for the stop." Doc. #27, p. 7. In *United States v. Mendez*, 476 F.3d 1077 (9th Cir. 2007), the Ninth Circuit expressly overruled *Perez* as to the issue of police questioning on matters unrelated to the purpose of the initial detention after the Supreme Court's decision in *Muehler v. Mena*, 544 U.S. 93 (2005).

[8] Cruz admits that Phillips' inquiries regarding his destination and general travel plans were "probably justifiable." Doc. #27, p. 7; *United States v. Hill*, 195 F.3d 258, 268 (6th Cir. 1999) (questions regarding purpose of travel were reasonable at the outset of a traffic stop).

10

Certainly, either of Cruz's stated reasons for traveling to Battle Mountain were not, in and of themselves sufficient to warrant further detainment. Nevertheless, the Court finds Cruz's unusual travel from Las Vegas to Battle Mountain to Fairfield and back to Battle Mountain, coupled with his own admission that he used to sell drugs in Battle Mountain would certainly give pause to an officer with Phillips' experience in drug interdiction. Moreover, Cruz's inconsistent statements regarding the purpose for his trip to Battle Mountain undoubtedly added to the suspiciousness of Cruz's already suspicious travel plans. *See, e.g.*, *United States v. Bracamontes*, 614 F.3d 813, 816 (8th Cir. 2010) (inconsistent statements as to the purpose of travel by occupants of a vehicle established the requisite reasonable suspicion to justify detainment for further investigation); *United States v. Lyons*, 486 F.3d 367, 372 (8th Cir. 2007) (combination of detainee's unusual itinerary, contradictory statements regarding travel, and large amount of luggage for a comparatively short trip, when viewed together, warranted further investigation).

In sum, the Court concludes that the totality of the aforementioned circumstances ascertained by Phillips during the initial traffic stop were sufficient to support Cruz's continued investigative detention based on reasonable suspicion of criminal activity. Although these circumstances (aside from the odor of marijuana), individually, may have been consistent with innocent and otherwise lawful behavior, taken together, from the perspective of an officer experienced in drug interdiction, they furnished reasonable suspicion that Cruz was engaged in criminal activity. *See United States v. Simpson*, 609 F.3d 1140, 1152-53 (10th Cir. 2010) (concluding that trooper had reasonable suspicion that criminal activity was afoot where detainee had criminal record of drug trafficking, was acting extremely nervous, and provided evasive answers that described a fairly implausible travel plan). Accordingly, the Court concludes that Cruz's prolonged investigatory detention was justified at its inception under the Fourth Amendment.

///

///

### B.     Reasonable Scope

Second, assuming the investigative stop was justified at its inception, the duration of the stop must be assessed for reasonableness. In *United States v. Sharpe*, the Supreme Court held that in assessing whether a detention is too long in duration to be justified as an investigative stop, it is proper to examine whether the police diligently pursued a means of investigation likely to confirm or dispel their suspicions quickly. 470 U.S. at 686.

Here, the parties agree that Cruz was detained for twenty to thirty minutes beyond the initial traffic stop to wait for the arrival of a canine unit. Because Lee's NHP vehicle was temporarily out of service, and there were no other canine units available with either RPD or WCSO, it was necessary to await Lee's arrival. Under these circumstances, the Court finds that Phillips diligently pursued his investigation though means which would as quickly as possible dispel or confirm his reasonable suspicion that Cruz was engaged in criminal activity. As such, Cruz was not detained longer than necessary to effectuate the investigation. *See United States v. Maltais*, 403 F.3d 550, 557-58 (8th Cir. 2005) (detention of 90 to 120 minutes to arrange for arrival of drug dog was reasonable where it was impractical under the circumstances for law enforcement to respond any sooner than it did); *United States v. Mendoza*, 468 F.3d 1256, 1261 (10th Cir. 2006) (40-minute detention awaiting arrival of nearest dog handler and drug dog was reasonable); *United States v. Orsolini*, 300 F.3d 724, 730 (6th Cir. 2002) (50-minute detention was permissible when 35 of those minutes elapsed while drug-sniffing dog was en route). Accordingly, the Court finds that the twenty to thirty minutes during which Cruz was detained for further investigation was reasonable under the circumstances and, therefore, did not violate the Fourth Amendment.

///
///
///
///
///

**IV.    Conclusion**

The Court concludes that Cruz's twenty to thirty minute investigative detention following the initial traffic stop was reasonable and thus did not run afoul of the Fourth Amendment. Accordingly, the evidence that was seized as a result thereof shall not be suppressed pursuant to Rule G(8)(a).

IT IS THEREFORE ORDERED that Cruz's Motion to Suppress Evidence Pursuant to Supplemental Rule G(8) (Doc. #27) is DENIED.

IT IS SO ORDERED.

DATED this 25th day of March, 2014.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE

13